# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HALL, | 1:06-CV-01319 LJO SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. MENDOZA-POWERS, Acting Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial on September 16, 1988, of second degree murder in violation of Cal. Penal Code § 187(a). See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. In addition, the allegation that Petitioner was armed with a firearm in violation of Cal. Penal Code § 12022(a) was found to be true. Id. On April 12, 1989, Petitioner was sentenced to serve an indeterminate term of sixteen years to life in state prison with the possibility of parole. Id.

On June 23, 2004, Petitioner attended a subsequent parole suitability hearing before the California Board of Prison Terms (now the Board of Parole Hearings - "BPH"). See Answer, Exhibit 2. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the BPH concluded Petitioner was suitable for parole. Id. at 64.

On November 19, 2004, after considering the parole decision of the BPH, the Governor reversed the Board's decision. See Answer, Exhibit 3.

Petitioner sought relief in the state courts. He filed a habeas petition in the Los Angeles County Superior Court on April 18, 2005, which was denied in a reasoned decision on June 17, 2005. See Answer, Exhibit 4. He then filed a habeas petition in the California Supreme Court on July 25, 2005. See Answer, Exhibit 5. That petition was denied on May 24, 2006, with citation to In re Rosenkrantz, 29 Cal.4th 616 (2002). Id.

Petitioner filed the instant petition for writ of habeas corpus on September 1, 2006, in the United States District Court, Central District of California. The petition was transferred to this Court on September 11, 2006. The petition challenges the Governor's 2004 decision reversing the Board's grant of parole.

On January 2, 2007, Respondent filed an answer to the petition. Respondent concedes Petitioner has exhausted his state remedies and the petition is timely. Petitioner filed a traverse on March 14, 2007.

## FACTUAL BACKGROUND[1]

On February 8, 1988, Petitioner, who was a member of the Crips gang, was involved in a confrontation with members of the Bloods gang in Los Angeles, California. During that confrontation, someone from the rival gang shot at Petitioner. Later that evening, Petitioner obtained a pistol-gripped shotgun from another gang member and went looking for the victim, who Petitioner knew from having grown up in the same neighborhood and who he thought might have been the person who had shot at him. Petitioner went to the apartment complex where the victim lived, and when the victim stepped out of his apartment, Petitioner discharged his shotgun

---

[1] The facts are derived from the transcript of Petitioner's parole hearing of 2004. See Answer, Exhibit 2.

1  several times at him. The victim sustained a shotgun blast to his chest and he died as a result.

**DISCUSSION**

I. <u>Standard of Review</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v. Lambert</u>, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see <u>Lockyer</u>, 538 U.S. at 70-71; see <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

3

1  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
2  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
3  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
4  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
5  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
6  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

7        Finally, this Court must consider whether the state court's decision was "contrary to, or
8  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
9  72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
10 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
11 Court on a question of law or if the state court decides a case differently than [the] Court has on a
12 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
13 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
14 state court identifies the correct governing legal principle from [the] Court's decisions but
15 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
16 413.

17       "[A] federal court may not issue the writ simply because the court concludes in its
18 independent judgment that the relevant state court decision applied clearly established federal
19 law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.
20 A federal habeas court making the "unreasonable application" inquiry should ask whether the
21 state court's application of clearly established federal law was "objectively unreasonable." Id. at
22 409.

23       Petitioner has the burden of establishing that the decision of the state court is contrary to
24 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
25 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
26 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
27 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
28 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). In the state parole context, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, this Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, this Court must determine whether there is any evidence in the record that could support the conclusion reached by the Governor. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of

5

Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the parole board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given with advance notice of the hearing, he was represented by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the Board's reasons. See Answer, Exhibit 2. All of this information was submitted to the Governor and considered in his decision.

Petitioner, however, contends the Governor's decision was arbitrary, capricious, and had no evidentiary support. After reviewing the record, the Court finds that the state court decisions rejecting Petitioner's claims were not unreasonable, because the Governor's decision is supported by at least "some evidence."

Title 15, of the California Code of Regulations, Section 2402(c) sets forth certain negative factors which the Board would consider in determining whether Petitioner is suitable for parole.

Section 2402(c) provides:

> Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general

>guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
>>(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>>
>>>(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>>
>>>(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>>
>>>(C) The victim was abused, defiled or mutilated during or after the offense.
>>>
>>>(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>>
>>>(E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>>
>>(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>>
>>(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>>
>>(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>>
>>(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>>
>>(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

15 Cal.Code Regs. § 2402(c).

In reversing the Board's decision, the Governor considered and found several factors indicating unsuitability per § 2402(c). First, the Governor relied on Petitioner's previous record of violence pursuant to § 2402(c)(2). The Governor noted Petitioner was an active gang member at the time of his arrest and had an extensive criminal history going back to an early age. Petitioner became a member of the Crips gang when he was 13 or 14 and remained one even after his incarceration for another five years. As a juvenile, Petitioner committed an armed robbery. As an adult, he was twice convicted for carrying a firearm in a public place and once for

assault with a deadly weapon or force likely to commit bodily injury on a peace officer. He admitted to routinely carrying a gun since age 17. Further, he admitted to committing other crimes at the hearing, including burglaries and shoplifting. Petitioner also admitted to abusing marijuana from age 13 and alcohol from age 17. Thus, there was ample evidence to support the Governor's reliance on Petitioner's previous criminal record as a factor demonstrating unsuitability for parole.

The Governor further found Petitioner had engaged in negative behavior and misconduct while incarcerated. First, it was noted that Petitioner remained a gang member for five years after being incarcerated. The Governor further noted that Petitioner had been disciplined four times for misconduct, at least two of which were serious and most recently in 1993, and he had been counseled thirteen times for minor misconduct. Pursuant to § 2402(c)(6), the Governor properly relied on these circumstances as negative indicators of suitability.

The Governor also relied on the facts of the commitment offense. Pursuant to § 2402(c)(1)(B), the Governor found the second degree murder was carried out in a dispassionate and calculated manner. This finding is also supported by "some evidence." Petitioner obtained a shotgun and went looking for the victim. When he found the victim at the victim's residence, he discharged his weapon without warning when the victim stepped outside. These facts certainly support the Governor's finding of a calculated and dispassionate murder per § 2402(c)(1)(B). The Governor also noted that the motive, gang retaliation, was very trivial when compared to the offense of murder pursuant to § 2402(c)(1)(E). This factor is also supported by the facts.

The Governor also found several positive factors in Petitioner's background under § 2402(d). The Governor noted that Petitioner had performed a number of job assignments satisfactorily while in prison, obtaining several laudatory work reports. See § 2402(d)(9). Petitioner had also participated and completed several self-help and therapy programs. Id. Also, the Governor found Petitioner had realistic parole plans for employment and a job offer waiting upon his release. See § 2402(d)(8). Nevertheless, the Governor found the negative factors greatly outweighed these positive gains and determined Petitioner posed an unreasonable risk of danger to society if released.

It is apparent the Governor considered all relevant evidence in this case and carefully balanced and assessed the various factors. Those findings were supported by at least "some evidence."

Petitioner also contends the Governor is relying solely on the immutable circumstances of the underlying offense and his criminal history prior to incarceration. The Ninth Circuit has held that serious questions involving a prisoner's liberty interest in parole would be raised if the Board or Governor continued to rely solely on the gravity of the offense and conduct prior to imprisonment to justify denial of parole, despite a prisoner's continuing demonstration of exemplary behavior and evidence of rehabilitation. Biggs, 334 F.3d at 916. As discussed above, however, the circumstances of the offense and Petitioner's past criminal history, while significant, were not the only reasons for the Governor's decision. The Governor also relied on Petitioner's institutional misconduct in denying parole.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to United States District Court Judge Lawrence J. O'Neill, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after

1 service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to
2 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the
3 specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951
4 F.2d 1153 (9th Cir. 1991).
5 IT IS SO ORDERED.

**Dated:   November 14, 2007**          /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE